UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VIRGINIA R.,**<br><br>　　Plaintiff,<br><br>　　v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　Defendant. | Civ. No. 20-20687 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　The plaintiff, Virginia R., seeks review pursuant to 42 U.S.C. § 405(g) of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Social Security disability benefits. For the reasons stated below, the Commissioner's decision is **REVERSED and REMANDED** for proceedings consistent with this opinion.

**I.　BACKGROUND**[1]

　　Ms. R. applied for disability insurance benefits on October 12, 2017, alleging disability which began on April 11, 2016. (R. 54-55, 141.) Her claims were denied at the initial and reconsideration levels of administrative review, so at Ms. R.'s request ALJ Richard West convened a hearing. (R. 20, 41, 60-61, 73.) In a written decision, ALJ West found that Ms. R. was not disabled from April 11, 2016, the date her disability allegedly began, through January 28, 2020, the date he issued his decision. (R. 20, 32.) The Appeals Council denied

---

[1]　Certain citations to the record are abbreviated as follows:

　　"DE" refers to the docket entry numbers in this case

　　"R." refers to the Administrative Record (DE 7) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 7 attachments)

　　"Pl. Brief" refers to Ms. R.'s brief filed on July 18, 2021. (DE 10.)

Ms. R.'s request for a review on November 13, 2020, and this appeal followed. (R. 1–5.)

## II. DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

For the purposes of this appeal, the Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less

than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Decision

The ALJ applied the five-step framework.

At step one, the ALJ determined that Ms. R. had not engaged in substantial gainful activity since her alleged onset date of April 11, 2016. (R. 22.)

At step two, the ALJ found that Ms. R. had the following severe impairments: degenerative disc disease, radiculopathy, plantar fasciitis and obesity. (R. 22.) The ALJ concluded, however, that Ms. R.'s medically determinable mental impairment of depression was "nonsevere." (R. 22-23.) In making this latter determination, the ALJ "considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders," known as the "paragraph B" criteria. (R. 22 (citing 20 CFR, Part 404, Subpart P). The ALJ found a "mild limitation" in the first and third functional areas—"understanding, remembering or applying information" and "concentrating, persisting or maintaining pace"—while finding "no limitation" in the second and fourth functional areas—"interacting with others" and "adapting or managing oneself." (R. 23-24.)

At step three, the ALJ found that Ms. R. does not have an impairment or combination of impairments that meets or equals the criteria of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 24.)

At step four, the ALJ decided that Ms. R. has the RFC "to perform sedentary work as defined in 20 CFR § 404.1567(a) except she cannot climb ladders, ropes or scaffolds, kneel or crawl, and can perform other postural functions occasionally." (R. 25.) Although he found that "[s]he can understand,

remember and carry out simple instructions on a sustained basis," (R. 25), he also concluded that Ms. R.'s "deficits in memory and concentration/focus attributable to medication side effects, pain symptoms and/or mental symptoms of depression," limited her to "'simple,' i.e. unskilled" work and foreclosed her from returning to her past job as a customer order clerk. (R. 25, 30.)

At step five, the ALJ found that Ms. R. was capable of making a successful adjustment to other work that existed in significant numbers in the national economy and concluded that she was not disabled at any time during the relevant time period. (R. 31-32.) Though the ALJ acknowledged that Ms. R. had both exertional and nonexertional limitations, he found that these limitations "have little or no effect on the occupational base of unskilled sedentary work" and thus the medical-vocational rules directed a finding of "not disabled." (*Id.*) The ALJ did not hear testimony from a vocational expert, basing this conclusion instead on Social Security Ruling ("SSR") 96-9p, concerning the "implications of a residual functional capacity for less than a full range of sedentary work." (R. 31.) Reviewing the provisions of this rule, the ALJ decided that Ms. R.'s nonexertional limitations—i.e., her postural limitations regarding climbing, kneeling, crawling and her mental limitations regarding understanding and concentration—"have not significantly eroded the unskilled sedentary occupational base." (R. 31-32.) Accordingly, the ALJ concluded that a "finding of 'not disabled' is therefore appropriate under the framework of the [medical vocational rules]." (R. 32.)

### III.  DISCUSSION AND ANALYSIS

Ms. R. argues that the ALJ's decision should be overturned because it was not supported by substantial evidence, specifically claiming that (1) the ALJ's determination of RFC at step four failed to include consideration of her "severe" psychological impairments in the areas of concentration, persistence, and pace and improperly discounted evidence of Ms. R.'s physical limitations, (Pl. Brief at 16-20); (2) the ALJ improperly discounted her testimony and the medical assessment of Dr. Pietro Seni, which would support a finding of lesser

4

RFC (Pl. Brief at 18-20);[2] and (3) the ALJ's determination that Ms. R. was capable of unskilled sedentary labor at step five was rendered "invalid" by the ALJ's mistakes at step four (Pl. Brief at 20-21). Finally, she urges that the ALJ committed legal error at step five by relying on SSR 96-9p, rather than the testimony of a vocational expert witness, as required by the Third Circuit's decision in *Sykes v. Apfel*, 228 F.3d 259, 273-74 (3d Cir. 2000) (requiring "the testimony of a vocational expert or other similar evidence" in order to "establish that there are jobs in the national economy" that someone with both "exertional and nonexertional impairments can perform") (Pl. Brief at 20-24.)

Before assessing these claims in earnest, I note that it is not my role on appeal to reevaluate whether Ms. R. is entitled to disability benefits. Instead, I am constrained to review the final decision of the Commissioner, which in this case is the decision of the ALJ, to assess whether it rests on the application of proper legal standards and whether it is supported by "substantial evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); 42 U.S.C. § 405(g) (the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). That threshold "is not high," and requires only that the decision be supported by "more than a mere scintilla" of evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 1157 (2019). I do not "weigh the evidence or substitute [my] conclusions for those of the [ALJ] fact-finder." *Williams v. Sullivan*, 879 F.2d 1178, 1182 (3d Cir. 1992).

On the other hand, an ALJ's legal conclusions are subject to plenary review by this Court. *See Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431. However, for a remand to be warranted, an ALJ's legal error must be harmful, i.e., it must have affected the outcome of the case. *See Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021); *Rutherford*, 399 F.3d at 553.

---

[2]   Dr. Seni did not treat or examine Ms. R. but reviewed Ms. R.'s medical records and the reports of the medical providers who treated her. (R. 455.)

### A. Whether the ALJ's Decision at Step Four Lacked Substantial Evidence

While Ms. R. may disagree with the ALJ's decision—with its supporting evidence, its rationale, and its result—she has not demonstrated that the decision lacked a basis in substantial evidence. I turn first to her argument that the ALJ's decision warrants reversal because it failed to properly consider the extent of Ms. R.'s mental impairments, failed to explain the ALJ's determination that Ms. R. could concentrate "on a sustained basis," and failed to support his conclusion with record evidence. (Pl. Compl. at 14-15.)

The ALJ's decision itself belies these claims. At step two, the ALJ found that Ms. R. has mild limitations in both "understanding, remembering or applying information" and "concentrating, persisting or maintaining pace"—observations that were consistent with the evidence cited and conclusions made in his decision. In calculating the RFC, the ALJ accepted Ms. R.'s statements that she has some difficulties in memory and understanding due to her medications; he disagreed, however, with Ms. R.'s statements "concerning the intensity, persistence and limiting effects of these symptoms." (R. 26-27.) As a basis for this disagreement, he cited medical assessments of Ms. R. in which she reported forgetfulness related to her prescription pain medications but otherwise denied she had memory loss or other mental disturbances. (R. 381-82.) Indeed, in finding at step two that Ms. R.'s limitations in understanding, memory, and concentration were mild, the ALJ cited her initial intake report from April 17, 2019, as noting that Ms. R. displayed "appropriate" thought process and thought content, had cognitive functioning and affect that were "within normal limits," and was oriented to person, time, and place. (R. 23 (citing R. 669-70).) He further cited Ms. R.'s function report from 2018 in which she reported difficulties in memory and understanding, but not in concentration or following instructions, stating that she could follow both written and spoken instructions well. (R. 213-14, 216.) Taken together, this evidence is clearly sufficient to meet the relatively low hurdle of "substantial evidence."

Ms. R. also alleges that the ALJ's determination of RFC is flawed because he discounted evidence that her physical condition and resultant pain precluded her from sitting for extended periods of time. The ALJ's ultimate conclusion is supported by substantial evidence, however, and I am bound to uphold it. The ALJ specifically cited the findings of Dr. Pietro Seni that Ms. R. is capable of sitting "2 hours at a time followed by 15-minute rest period from all work for a total of 7 hours per 8-hour workday" and is capable of standing "for 1 hour at [a] time, followed by a 15-minute rest period, for a total of 4 hours in an 8-hour workday." (R. 29.) Dr. Seni, in turn, based these conclusions on medical reports indicating that Ms. R.'s condition had improved and her pain lessened over the course of treatment with epidural steroid injections, physical therapy, and home exercise/stretching. (R. 455-57.) Though he observed that her pain is aggravated by "walking, standing, sitting, lifting, [or] bending for prolonged periods of time," he cited the opinion of one of Ms. R.'s treating physicians that she could nonetheless sit and stand for up to 2 hours at a time. (R. 457-60.) Further, the ALJ cited the opinions of the non-examining consultants from the Division of Disability Services that Ms. R., despite experiencing genuine pain resulting from her medical condition, was nonetheless capable of sitting for up to 6 hours in an 8-hour workday, provided normal breaks, and capable of standing or walking for up to 4-hours, also assuming normal breaks. (R. 70-71.) The ALJ's decision rested on substantial evidence and I cannot conduct my own contrary evaluation of the medical evidence under the guise judicial review.

### B. Whether the ALJ's Decision Violates *Sykes v. Apfel*

As outlined above, the Commissioner bears the burden at step five of showing that the claimant can perform work which exists in the national economy, in light of her age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). That analysis may depend on whether the claimant has only exertional limitations or has nonexertional limitations. Exertional limitations are impairment-caused limitations that affect a claimant's ability to

meet the strength demands of a job: sitting, standing, walking, lifting, carrying, pushing, and pulling. *See* 20 C.F.R. § 404.1569a(b); SSR 96-9p. Nonexertional limitations are impairment-caused limitations that affect a claimant's ability to meet the other demands of a job, including mental capabilities; vision and hearing; postural functions such as climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling; and environmental restrictions. *See* 20 C.F.R. § 404.1569a(c)(1)(i-vi); SSR 96-9p.

Where a claimant has only exertional limitations, the Commissioner may use the Medical-Vocational Rules to determine whether such work exists. The Medical-Vocational Rules set forth tables, or grids, with various combinations of age, education, work experience and RFC, and direct a finding of disabled or not disabled for each combination. *See* 20 C.F.R. Part 404, Subpt. P, App. 2. In an appropriate case, the ALJ "may rely on these grids to establish that jobs exist in the national economy that a person with the claimant's exertional limitations could perform." *Sykes*, 228 F.3d at 263. However, this approach is appropriate only in relation to exertional limitations; where the claimant has nonexertional limitations, the grids provide only a framework, and the ALJ must consider additional evidence to determine whether there are jobs in the national economy that someone with the claimant's combination of impairments could perform. *Id.* at 270; *see also Allen v. Barnhart*, 417 F.3d 396, 404 (3d Cir. 2005).

Social Security Rulings may supply the additional evidence required under *Sykes v. Apfel*; such SSRs, if directly applicable, may be a permissible substitute for the testimony of a vocational expert. *See Allen*, 417 F.3d at 406 ("While, surely, the Agency can use its rules as a substitute for individualized determination, nonetheless, there must be a 'fit' between the facts of a given case, namely, the specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the base."). But "it must be crystal-clear that the SSR is probative as to the way in which the

nonexertional limitations impact the ability to work," and the ALJ's analysis must establish such "fit." *Id.* at 407.

Here, Ms. R. has evident nonexertional impairments, specifically postural and mental limitations. The ALJ noted as much in determining Ms. R.'s RFC, finding that she is physically incapable of climbing, kneeling, and crawling while exhibiting "deficits in memory and concentration/focus." (R. 25.) In determining the effect of these nonexertional impairments on Ms. R.'s ability to do unskilled sedentary work, i.e., her "occupational base," the ALJ at step five did not hear any testimony from a vocational expert, but instead relied on the provisions of SSR 96-9p. Whether or not such reliance was proper depends, as discussed, on whether SSR 96-9p has "crystal clear" probative value in determining the effect of Ms. R.'s nonexertional impairments on her ability to perform unskilled sedentary work. To the extent that it lacks such obvious and clear evidentiary value, SSR 96-9p cannot stand in as a substitute for the vocational expert testimony required by *Sykes,* and thus cannot demonstrate, standing alone, that the Commissioner has met the burden of showing that Ms. R. is able to work.

Turning first to Ms. R.'s postural limitations, the ALJ's decision stands on its firmest ground. SSR 96-9p provides that postural limitations restricting an individual's ability to "climb[] ladders, ropes, or scaffolds, balance[e], kneel[], crouch[], or crawl[] would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." As such, the ALJ found that Ms. R.'s postural limitations preventing her from climbing, kneeling, and crawling "did not "significantly erode" her occupational base. Here, SSR 96-9p is clearly probative just as there is an obvious "fit" between Ms. R.'s nonexertional impairments and SSR 96-9p's guidance on how such impairments impact her occupational base. *See Allen,* 417 F.3d at 406-07. Accordingly, SSR 96-9p was a permissible substitute for vocational evidence in determining how these particular nonexertional impairments affected Ms. R.'s ability to work.

As to mental impairments, however, the ALJ's reliance on SSR 96-9p is on shakier footing. Indeed, SSR 96-9p itself provides guidance regarding mental limitations that is more equivocal and dependent on the nature of the limitations themselves. The extent of an individual's capacity to perform basic work-related activities—such as "[u]nderstanding, remembering, and carrying out simple instructions," making "simple work-related decisions," and "[d]ealing with changes in a routine work setting"—will determine the extent to which that individual's mental impairments affect their occupational base. SSR 96-9P (S.S.A. July 2, 1996). Where an individual's mental impairments result in a "substantial loss of ability" to perform basic work-related activities, they "substantially erode" an individual's occupational base and justify a finding of disability. *Id.* Where the mental impairments result in a loss of ability that is "less than substantial," such loss "may or may not significantly erode the unskilled sedentary occupational" and the ALJ must assess "the individual's remaining capacities . . . as to their effects on the unskilled occupational base considering the other vocational factors of age, education, and work experience." *Id.* Given the evident complexity of this analysis, SSR 96-9p notes that "[w]hen an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource." Under the circumstances of this case, I find that reliance on a VE was not just useful, but necessary to a fair determination.

At least regarding Ms. R.'s mental limitations, SSR 96-9p's guidelines do not offer the "crystal clear" evidentiary support to the ALJ's ruling that would allow me to find it a proper substitute for the vocational expert testimony required by *Sykes*. Ms. R.'s deficits in understanding and memory were the basis of the ALJ's determination that her RFC included only unskilled labor and prevented her from performing her past skilled work of a customer order clerk. Nonetheless, in determining RFC, the ALJ found that Ms. R. could understand, remember, and follow simple instructions "on a sustained basis," using this finding to bootstrap the conclusion at step five that whatever the extent of Ms. R.'s mental limitations, they had not "significantly eroded" her

10

ability to do unskilled sedentary work. Yet the ALJ's analysis looked only to whether Ms. R.'s mental limitations in memory, understanding, and concentration reflected a "substantial" loss of ability on a "sustained basis." As noted however, SSR 96-9p also provides that mental limitations causing a "less than substantial" loss of ability in understanding, memory, following instructions, decision-making, or coping with change may nonetheless result in a finding of disability. In such a circumstance, SSR 96-9p does not have "crystal clear" probative value; it may guide the ALJ's decision, but it counsels in favor of an individualized analysis and resort to vocational resources when uncertainty arises, especially in borderline cases. Accordingly, the ALJ could not rely on SSR 96-9p alone to find that Ms. R.'s nonexertional limitations were of no consequence to her occupational base. Without testimony from a vocational expert or a proper substitute, the ALJ's decision runs afoul of *Sykes*.

## IV.   CONCLUSION

Ms. R. is entitled to a remand. On remand, the Commissioner is directed to take evidence from a vocational expert. That said, I express no view on what the ultimate ruling of disability or non-disability should be.[3] For the reasons set forth above, the Commissioner's decision is **REVERSED and REMANDED** for further proceedings consistent with this opinion.

A separate order will issue.

Dated: March 7, 2022

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

---

[3]   Because I find that the ALJ committed legal error at step five, I do not address Ms. R.'s argument that his decision at this step also lacked substantial evidence.

11